**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LARRY KLAYMAN,

                         Plaintiff,

        v.

JUDICIAL WATCH, INC.,

                     Defendant.

                     Civil Action No. 1:15-cv-00214

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT JUDICIAL WATCH, INC.'S MOTION TO DISMISS

Plaintiff, Larry Klayman, hereby files this Memorandum in Opposition to Defendant Judicial Watch, Inc.'s (" Defendant Judicial Watch") Motion to Dismiss this case for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure ("FRCP"), and that the Complaint is barred by the doctrine of *res judicata*. Viewing the facts in the light most favorable to Plaintiff, and based on the United States District Court for the District of Columbia's own prior rulings, Plaintiff has more than sufficiently stated claims for which relief can be granted. Moreover, federal and other courts have repeatedly rejected challenges to a plaintiff's initial complaint nearly identical to the ones raised here by Defendant Judicial Watch. Viewing the facts as true, as it must for purposes of a motion to dismiss, this Court may unhesitatingly exercise authority over Plaintiff's claims of breach of contract and rescission of the Severance Agreement executed on September 19, 2003, by and between Plaintiff Klayman and Thomas Fitton.[1]

---

[1]     Defendant's Motion to Dismiss must ultimately be ruled upon by the Superior Court of the District of Columbia, as Defendant filed a frivolous removal notice for which Plaintiff has moved to summarily remand to the Superior Court.

## I.      INTRODUCTION

In its latest attempt to dismiss the allegations against it, Defendant Judicial Watch returns to the same themes it unsuccessfully used to challenge prior complaints – striving mightily to throw out a case on an alleged Rule 12(b)(6) motion that simply is not ripe to consider for dismissal. Indeed, the order in the case that Defendants rely upon in their Motion to Dismiss, *Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 112 (D.D.C. 2009), says just this, repeatedly.

In her Memorandum Opinion of January 17, 2007, the Honorable Colleen Kollar-Kotelly for the United States District Court for the District of Columbia states unequivocally, "Fitton and Judicial Watch assert that Court Six must be dismissed for two reasons. First, they argue that Klayman cannot seek the equitable remedy of rescission because an adequate remedy at law is available to him . . . Second, they argue that before seeking rescission, Klayman must restore Judicial Watch to its pre-contract position . . . The Court finds Fitton and Judicial Watch's arguments unavailing at the motion to dismiss stage." *Klayman v. Judicial Watch, Inc.*, Act. No. 06-670, Mem. Op. (D.D.C. Jan. 17, 2007) at 27.

Then again, on April 3, 2007, ruling on a partial motion for summary judgment – a much higher legal standard to survive than a motion to dismiss, which Defendant seeks here – Judge Kollar-Kotelly reemphasizes, " . . . the Court shall not dismiss Count Six in its entirety because that Count also appears to allege that Judicial Watch has materially breached the Severance Agreement and that Klayman is entitled to rescission as a result of the alleged material breach." *Klayman v. Judicial Watch, Inc.*, Act. No. 06-670, Mem. Op. (D.D.C. Apr. 3, 2007) at 14. Judge Kollar-Kotelly denied Defendant's Motion for Partial Summary Judgment for that claim

---

While Plaintiff acknowledges that the consideration of Defendant Judicial Watch's Motion to Dismiss has been stayed for disposition, Plaintiff Klayman files this Opposition timely out of an abundance of caution.

contained in Count Six because "genuine questions of material fact remain[ed]," *Id.* at 19, as genuine issues of fact remain here.

Although not entirely clear, Defendant's Motion to Dismiss appears to rest on two grounds: First, Defendant moves against the breach of contract and rescission claims for failure to state a claim; second, Defendant moves to dismiss on the grounds that the Complaint is barred by the doctrine of *res judicata*. As Plaintiff shows below, the allegations in the Complaint more than sufficiently state claims against the Defendant and *res judicata* simply does not apply here. For these reasons and others more fully set forth below, Defendant's Motion to Dismiss must be summarily denied.

## II.      STANDARD OF REVIEW

The standard for dismissal under FRCP 12(b)(6) is difficult to satisfy. In ruling on a motion to dismiss, courts must accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party. *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 109 (1979). The allegations of the complaint should be construed broadly and liberally in the plaintiffs' favor. Wright & Miller, *Federal Practice & Procedure* § 1350, p. 551. It is well-established that a complaint should not be dismissed for failure to state a claim unless the plaintiff can prove no set of facts in support of his claim, especially when ruling on a motion to dismiss. "The complaint must be 'liberally construed in favor of plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)

A complaint will survive a motion under FRCP 12(b)(6) if it states plausible grounds for Plaintiff's entitlement to the relief sought, *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965-66 (2007), i.e., it need merely contain sufficient factual allegations to raise a right to relief above

the speculative level. The issue before this Court is not whether Plaintiff "will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

As set forth in detail below, Plaintiff has surpassed this standard of review, well within the meaning of the foregoing case law, thus warranting denial of Defendant's Motion to Dismiss in its entirety.

## III.   PLAINTIFF HAS STATED A VALID CLAIM FOR RESCISSION

Plaintiff has stated a valid claim for rescission because Defendant Judicial Watch materially breached the Severance Agreement, Plaintiff has not received a full and complete adequate remedy at law, he intends to return Defendant Judicial Watch to its original position, and Plaintiff is timely in filing the instant case seeking rescission.

### A.  Plaintiff Klayman Alleged a Material Breach of the Severance Agreement by Defendant Judicial Watch.

Defendant Judicial Watch unconvincingly cites *Fowler v. A&A Co.*, 262 A.2d 344 (D.C. 1970) as its supporting case law. Ironically, however, *Fowler* addresses and affirms on its face Plaintiff's position that Defendant Judicial Watch materially breached the Severance Agreement.

A material breach of an agreement occurs when the complainant receives something "substantially less or different from that for which he bargained . . ." *Id.* at 347. In *Fowler*, homeowners contracted with A&A Company on February 22, 1961 to waterproof the basement of a home located in Maryland. The contract between the Fowlers and A&A Company provided: "[t]he above work is covered by our standard (5) year guarantee against penetration of water through surfaces treated by us . . ." *Id.* A&A finished its work at the Fowlers residence on March 10, 1961 yet wetness returned about in June of 1962, fifteen (15) months later – within A&A's guarantee timeline of (5) years.  Because of the express language of the contract between the

Fowlers and A&A, the court held, "[h]ere it is clear that in June, 1962, the contract was materially breached when wetness returned." *Id*.

Similarly, in *America*, the court found that the defendant breached a settlement agreement which contained a provision stating that "all inquires [about the plaintiff] from prospective employers received by [the defendant's agency] shall be referred to and handled by the Agency's Office of Human Resources." *America v. Preston*, 468 F. Supp. 2d 118, 123 (D.D.C. 2006). The court ruled that the defendant breached the settlement agreement when two of the defendants' employees failed to refer calls inquiring about the plaintiff to the human resources department "as required by . . . the settlement agreement."[2] *Id*. at 124.

Analogous to the breaches found in *Fowler* and *America*, here, Defendant Judicial Watch materially breached the Severance Agreement when a competent jury and court found that Defendant had maliciously defamed Plaintiff, thereby violating the Non-Disparagement Clause of the agreement and providing Plaintiff Klayman "substantially less than what he bargained for." *Fowler*, 262 A.2d at 347. The Non-Disparagement Clause of the Severance Agreement reads in pertinent part: "Judicial Watch expressly agrees that its present directors and officers namely Paul Orfanedes and Thomas Fitton, will not, directly or indirectly, disseminate or publish, or cause or encourage anyone else to disseminate or publish, in any manner, disparaging, defamatory or negative remarks or comments about Klayman." (Exhibit 1 ¶ 17). The Severance Agreement contains express language forbidding Defendant Judicial Watch and

---

[2]     In *Ingber*, a dentist filed an action against defendants alleging a breach of stock purchase and employment agreements, unjust enrichment, and that defendant had individually slandered him. The plaintiff dentist also sought rescission of the agreements. The trial court granted judgment against defendants and the appellate court affirmed. The courts concluded that defendants materially breached their agreement with plaintiff dentist to assure him "a full voice in the management and conduct of the Corporation's business" by refusing to share with him the management of the dental practice and by depriving him his right under the Stock Purchase Agreement. The appellate court granted rescission. *Ingber v. Ross*, 479 A.2d 1256 (D.C. 1984).

its employees from **directly or indirectly** disseminating or publishing defamatory or negative remarks or comments, just as the settlement agreement in *America* prohibited the defendant's agency from failing to refer inquires about the plaintiff to the agency's human resources department.

Moreover, whereas the defendant in *America* only had "reasonabl[e] belie[f]" that the defendant was in breach of the settlement agreement, *id.*, Plaintiff here actually received a final judgment in 2014 proving that Defendant Judicial Watch, by and through its employees, maliciously defamed Plaintiff. It is indisputable that Defendant Judicial Watch defamed Plaintiff, particularly in light of Plaintiff's status as a public figure, which requires a much higher standard to prove defamation. In short, the alleged defamation needed to be proved by malice; **it was**. Indeed, not only did the jury find in Plaintiff's favor for malicious defamation, but, **by clear and convincing evidence**, it also awarded punitive damages in order to punish Defendant Judicial Watch for its malicious conduct. As such, Defendant Judicial Watch strayed so far from the Severance Agreement that Plaintiff received "substantially less" than what he bargained for, namely, no defamatory publications or statements made against him. *Fowler*, 262 A.2d at 347.

Defendant Judicial Watch's fallacious argument that "Judicial Watch did not contractually agree to abstain from disparaging, defamatory or negative remarks or comments about Klayman, but only agreed that Paul Orfanedes and Thomas Fitton would so abstain" is so absurd as to have no merit in fact or law. Def.'s Mot. at 5. In addition, Defendant Judicial Watch seeks to mislead this honorable Court by falsely stating, "[e]xamining the allegations of the Complaint discloses that Klayman did not allege or prove that either Mr. Orfanedes or Mr. Fitton was involved in the statements by Ms. Ruffley in any way." *Id*. First, the Complaint unequivocally states, "Judicial Watch and its **officers and directors** would not, in any way,

disparage, denigrate or defame Klayman." (emphasis added) (Exhibit 2). Paul Orfanedes and

Thomas Fitton are officers and directors of Judicial Watch and at this stage of litigation, the

Court must accept all the allegations in the Complaint as true, and grant Plaintiff the benefit of

all inferences that can be derived from the alleged facts. *See EEOC v. St. Francis Xavier*

*Parochial School*, 117 F.3d 621, 625 (D.C. Cir. 1997).

Second, black letter principles indicate that ". . . [corporate officers] are individually

liable for the torts which they commit, participate in, or inspire, **even though the acts are**

**performed in the name of the corporation**." (emphasis added) *Camacho v. 1440 Rhode Island*

*Ave. Corp.*, 620 A.2d 242, 246 (D.C. 1993). Rather, "[i]ndividual liability attaches when a

corporate officer either physically commits the tortious conduct, or participates in 'some

meaningful sense' in the tortious conduct." *Id*. at 427 (citing *Vuitch v. Furr*, 482 A.2d 811, 823

(D.C. 1984).

In *Vuitch*, a patient brought an action against a physician, the physician's wife, and the

incorporated clinic owned by the two of them, for injuries she suffered as the result of an

abortion performed at the clinic. Although Mrs. Vuitch was not present when the allegedly

botched operation took place, had no medical training, and did not determine or participate in the

development of the medical policy for the clinic, the court held that Mrs. Vuitch could be held

liable for the plaintiff's injuries based on upon her participation in the tortious conduct. The court

emphasized that she was one of the three directors of the corporation, she and her husband

owned corporate stock and she was the corporation's secretary-treasurer, with duties in the areas

of business and finance. *Id*. at 247. As the court ruled, " . . . corporate officers, charged in law

with affirmative official responsibility in the management and control of the corporate business,

cannot avoid personal liability for wrongs committed by claiming that they did not authorize and

direct that which was done in the regular course of that business, with their knowledge and with their consent or approval, or such acquiescence on their part as warrants inferring such consent or approval." *Vuitch*, 482 A.2d at 821.

The facts here are even more compelling than in *Vuitch*. First, Paul Orfanedes is Defendant Judicial Watch's corporate secretary, corporate treasurer, director of litigation, head of the legal department, chief lawyer of the organization, and a member of the Board of Directors. Mr. Orfanedes manages and oversees the day-to-day operations of the Legal Department. Thomas Fitton serves as President of Defendant Judicial Watch, provides Judicial Watch with strategic guidance and leadership on comprehensive efforts, is a nationally recognized expert on government corruption, immigration enforcement, and congressional and judicial ethics. *See* (Exhibit 3) http://www.judicialwatch.org/about/board-of-directors/. Mr. Fitton is also a member of the Board of Directors. Needless to say, Mr. Orfanedes and Mr. Fitton are "charged in law with affirmative official responsibility in the management and control of the corporate business" and therefore "cannot avoid personal liability for wrongs committed by claiming that they did not authorize and direct that which was done . . ." *Vuitch*, 482 A.2d at 821.

Second, the jury instructions upon which the jury based its verdict that Defendant Judicial Watch maliciously defamed Plaintiff are crystal clear in addressing vicarious liability and the tortious conduct of Defendant Judicial Watch's officers and directors. Indeed, in order to collect punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant indulged ill-will, hostility and an intent to harm a plaintiff. Specifically, in the case that awarded Plaintiff Klayman punitive damages, the jury instructions read: "Punitive damages are only warranted if you find by clear and convincing evidence that [defendant] is guilty of intentional misconduct, recklessness or gross negligence, which was a substantial cause of injury, loss or

damage to Plaintiff Klayman and that Defendant Judicial Watch actively and knowingly participated in such conduct of its employee and []; or the **officers, directors or managers of Defendant Judicial Watch knowingly condoned, ratified, or consented** to such conduct of [] . . .” (emphasis added) (Exhibit 4).

In *Snow*, a plaintiff, Mrs. Snow, sued her landlord for damages arising from injuries she suffered when a section of a ceiling fell on her as she sat in the bedroom of her apartment. *Snow v. Capitol Terrace, Inc.*, 602 A.2d 121, 123 (D.C. 1992). The court ruled that “[s]ufficient participation can exist when there is ‘an act or omission by the officer which logically leads to the inference that he or she had a share in the wrongful acts of the corporation which constitute the offense.’” *Snow,* 602 A.2d at 127.

When Plaintiff discovered Defendant’s defamatory conduct in and around 2012, he politely asked the directors of Defendant Judicial Watch, through their attorney, to correct the defamatory publications. Specifically, Plaintiff Klayman wrote, “ . . . [r]ather than just filing suit, I am attempting to discuss having your clients mitigate the damage and try to resolve matters if we can.” In addition, Plaintiff wrote, “[i]n the meantime, thanks for advising JW [Judicial Watch] and [] what I informed u about.” (Exhibit 5). Instead of mitigating the damage already caused to Plaintiff Klayman, Defendant Judicial Watch’s counsel writes, “Judicial Watch did not authorize, make or participate in making, any statements regarding your indictment for criminal non-support. For this reason, it is not necessary for Judicial Watch to take any action to clarify or correct the statements of others.” (Exhibit 5). The clear act of omission here – if not blatant act of commission – is Defendant Judicial Watch’s, by and through its corporate directors, refusal to correct an allegedly defamatory publication that turned out to indeed be maliciously defamatory.

By failing to mitigate the damage and correct the defamatory statements and publications,

the jury reached the verdict and conclusion that Defendant Judicial Watch, by and through its directors and officers Paul Orfanedes and Thomas Fitton, participated in the conduct of its employee and knowingly condoned, ratified and consented to such tortious conduct. As *Vuitch* rules, acquiescence on the part of the corporate directors and officers of a corporation, such as deliberately not correcting defamatory statements when it would be a simple task to do so, warrants inferring such consent or approval. *Vuitch*, 482 A.2d at 821. The corporate officers and directors of Defendant Judicial Watch participated in a "meaningful sense" in the tortious conduct, *Vuitch*, 482 A.2d at 823, and as such, materially violated the Severance Agreement by viciously defaming Plaintiff.

### B.  Plaintiff Klayman Is Entitled to Rescission Because He Has Not Received an Adequate Remedy at Law for the Material Breach of the Severance Agreement.

Equitable remedies, such as rescission, are generally not appropriate where a sufficient remedy at law exists *when that remedy at law* compensates a plaintiff for the very breach of contract that a plaintiff seeks to rescind. The case that Defendant Judicial Watch relies on states just this: "It is 'axiomatic' that equitable relief will not be granted where the plaintiff has a complete and adequate remedy at law [for that which the plaintiff seeks equitable relief]." *Kakaes v. George Washington Univ.*, 790 A.2d 581, 583 (D.C. 2002)[3].

In *Kakaes*, George Washington University refused to award Dr. Kakaes tenure, who had been on a "tenure accruing" track at the University since his appointment in September 1987 as an Assitant Professor in the Department of Electrical Engineering and Computer Science. After a hearing, the court ruled that the University had failed to provide Dr. Kakaes with timely notice,

---

[3]     *Contra Ganaway v. Henderson*, 103 So. 2d 693, 695 (Fla. Dist. Ct. App. 1958) (granting rescission without considering the issue of whether damages were an adequate remedy); *Lanners v. Whitney*, 428 P.2d 398, 404 (Or. 1967) (allowing rescission irrespective of whether damages were an adequate remedy).

as required by the Faculty Code, of its decision to deny tenure, and the judge declined to order the University to grant Dr. Kakaes tenure. The judge held instead that he is entitled to an award of damages of $75,018, as well as costs and interest. *Kakaes*, 790 A.2d at 582.

The *Kakaes* case carries no legal weight for the instant case for many reasons. First, the judge awarded damages to Dr. Kakaes on the basis that the University breached its Faculty Code entitling Kakaes timely notice. The damages awarded intended to legally compensate Kakaes for the University's breach of the Faculty Code, yet Kakaes sought to obtain equitable relief – that is, requiring the University to grant him tenure – *on the very same breach of contract* that awarded him damages.

Here, Plaintiff Klayman never received a complete and adequate remedy at law because here he seeks rescission of the Severance Agreement because of Defendant Judicial Watch's material breach of that agreement. The only adequate remedy at law Plaintiff received is a final judgment from a jury specifically finding that Defendant Judicial Watch maliciously *defamed* Plaintiff. The jury never found and never awarded monies to Plaintiff because of a breach of the Severance Agreement. And similarly, Plaintiff Klayman never obtained damages for the breach of the Severance Agreement, like Dr. Kakaes received. Plaintiff Klayman never sued on the breach of the Severance Agreement when the jury awarded him damages and as such, the jury never ruled on the breach of the Severance Agreement. It only ruled on Defendant Judicial Watch's defamatory publications. Simply put, the jury never compensated Plaintiff for the breach of the Severance Agreement. Rather, it compensated Plaintiff for the defamation and therefore, there is no "double recovery" and Plaintiff never received an adequate remedy at law for that which he seeks here.

Second, conspicuously but not coincidentally absent from Defendant's Motion to Dismiss

is any mention of the *Choice of Law; Consent to Venue and Jurisdiction Clause* in the Severance Agreement. It specifically states:

> "This Agreement shall be governed by and construed in accordance with the laws of the District of Columbia, without regard to its conflict of laws principles. **The parties consent to the jurisdiction and venue of any state or federal court located within the District of Columbia** in any action or judicial proceeding brought to enforce, construe or interpret this Agreement or otherwise arising out of or relating to Klayman's employment."

(emphasis added) (Exhibit 1 ¶ 23). Even if Plaintiff Klayman wanted to litigate the breach of the Severance Agreement in Florida where he is a citizen – where the jury awarded him compensatory and punitive damages for Defendant Judicial Watch's malicious defamation in Plaintiff's community – he could not, pursuant to the Severance Agreement itself. The Severance Agreement expressly provides that any breach of contract or rescission claim – indeed any claim at all relating to enforcing, construing or interpreting the Severance Agreement – must be brought in the District of Columbia. As such, the jury verdict on Plaintiff Klayman's defamation claim is entirely independent of any claim for rescission or breach of contract, which Plaintiff seeks here and, because of the nature of the Severance Agreement, Plaintiff did not receive a complete and adequate remedy at law for any breach or rescission claim because those claims were never in front of the jury in Florida.

### C. Plaintiff Klayman Is Entitled to Rescission Because He Demonstrated His Intent to Return Defendant Judicial Watch to its Original Position.

Defendant Judicial Watch pushes *Freidman v. Kennedy*, 40 A.2d 72 (D.C. 1944) as binding case law that demonstrates Plaintiff Klayman must return Defendant to the position it was prior to the Severance Agreement. It is a "well settled principle of the law of rescission [] that one may not rescind in part and affirm in part; rescission must be in *toto*; and one may not rescind an agreement and at the same time retain the consideration received for its execution."

12

*Id*. at 75. Defendant Judicial Watch fails to mention, however, that Plaintiff Klayman never intended to keep the consideration received from the execution of the Severance Agreement and has expressly pled so in the instant Complaint.

In the Complaint in the instant action, Plaintiff Klayman specifically pled that "[he] is entitled to have the Severance Agreement rescinded and to have the parties restored to the position they were in before the Severance Agreement was entered into." And, an offer to restore the other party in a complaint is usually held to be a sufficient tender. *Fuller v. Chenault*, 157 Ala. 46, 47 So. 197 (1908); Am. Jur., Cancellation of Instruments § 43 (1937). Plaintiff Klayman fully intends to return the $600,000 that the Severance Agreement provided him.

Plaintiff Klayman intends to return the agreed upon Severance pay and thus, "indicate[s] to [Judicial Watch] at least the intent to restore the parties to the relative positions which they would have occupied if no such contract had ever been made."[4] *Brown v. Hornstein*, 699 A.2d 139, 143 (D.C. 1996). This indication to Defendant Judicial Watch is sufficient at this point of litigation because the party seeking rescission is not required to restore the consideration at the very outset of the litigation. "In equity, a person suing to rescind a contract, as a rule, is not required to restore the consideration at the very outset of the litigation." *Oubre v. Entergy Operations, Inc.*, 118 S. Ct. 838, 841 (1998).

### D.  Klayman Is Entitled to Rescission Because He is Timely.

Defendant Judicial Watch concedes that "[u]pon discovery of the defamation, [Plaintiff] is required 'to take speedy, affirmative action to keep or place [Judicial Watch] in statu[] quo.'"

---

[4]     In any event, the rule to place Defendant in status quo before the contract was made, here before the Severance Agreement was signed, is " . . . wholly an equitable one; impossible or unreasonable things which do not tend to accomplish equity in the particular transaction, are not required." *Sloane v. Shiffer*, 156 Pa. 59, 27 A. 67, 68 (1893), *quoted in* 12 *Williston, Contracts* § 1530 at 650 (3d ed. Jaeger); *see e.g.*, *Bankers Health & Life Ins. Co. v. Griffeth*, 59 Ga. App. 740, 1 S.E.2d 771 (1939); *see also* Restatement, Contracts § 349(2).

Def.'s Mot. at 9 *quoting Brown*, 699 A.2d 139 at 143.

Not surprisingly, however, is Defendant's mischaracterization of Plaintiff's Complaint with respect to timeliness. Defendant falsely states that "Klayman contends that defamatory statements published in September of 2012 are the basis for his claim for rescission. Compl. ¶ 16. Notwithstanding this, Klayman delayed taking any action for rescission until January of 2015, nearly two and half years later." Def.'s Mot. at 9. Defendant misses the boat entirely with this false recitation of the facts pled. Plaintiff does not contend that the defamatory statements published in 2012 are the basis for his claim of rescission. Instead, Plaintiff contends, and has always contended, that the final judgment and award of compensatory and punitive damages in June of 2014 are the basis for his rescission claim.

Rescission is available if the party seeking rescission has sought to rescind within a reasonable time. *Mariner Water Renaturalizer of Washington, Inc. v. Aqua Purification Sys., Inc.*, 665 F.2d 1006 (D.C. Cir. 1981). Plaintiff sought rescission because of the material breach of the Severance Agreement by Defendant Judicial Watch when Plaintiff obtained a final judgment from a jury on June 10, 2014. Plaintiff filed the instant action on January 13, 2015, just seven (7) months after the final judgment of the jury. This timeframe in and of itself is reasonable pursuant to the above case law but, because of the facts here and Defendant Judicial Watch's behavior, Plaintiff could have filed suit even after the seven (7) months here and he still would retain his right to rescind.

In *Goodman*, the plaintiffs sought rescission of a sale and settlement agreement on the grounds that the sale of their securities, and the simultaneous release of the pending state court litigation, had been procured in violation of both federal and Maryland securities laws. *Goodman v. Poland*, 395 F. Supp. 660, 669 (D. Md. 1975). The court held that although the plaintiffs

waited several months to assert a rescission remedy, the delay did not bar plaintiffs from seeking

that remedy where they sought advice of counsel and began investigating avenues upon which

plaintiff could seek recovery after the discovery of the facts pointing to the alleged violation

inducing rescission. *Id*. at 677.

Even more compelling than the facts in *Goodman*, here, Plaintiff Klayman could not

possibly have filed the instant action any sooner because of a pending legal issue. Plaintiff

Klayman obtained a judgment on June 10, 2014 awarding him compensatory and punitive

damages. On August 11, 2014, Plaintiff asked the court for attorneys' fees and costs. On August

12, 2014, the court denied Plaintiff's motion for attorneys' fees and on August 26, 2014, Plaintiff

filed a notice of appeal to the Court of Appeals for the Eleventh Circuit ("Eleventh Circuit"). On

August 28, 2014, the Eleventh Circuit acknowledged receipt of the appeal. On September 29,

2014, the Eleventh Circuit questioned *sua sponte* whether it had jurisdiction over the appeal due

to Plaintiff's citizenship in Florida and a potential lack of diversity.

The Eleventh Circuit finally ruled on January 29, 2015 that "[g]iven the allegation of Mr.

Klayman's Florida citizenship in paragraph 2 of the amended complaint and other evidence in

the record of Mr. Klayman's domicile in Florida, the Court is convinced that Mr. Klayman

sufficiently established Florida citizenship. As a result, diversity jurisdiction existed." (Exhibit

6). Had the Eleventh Circuit ruled that there was no diversity jurisdiction, the lower court verdict

and judgment would have been nullified. Plaintiff Klayman felt compelled to file the instant

action on January 13, 2015 because he believed the Eleventh Circuit would rule momentarily and

in order to avoid just such an affirmative defense by Defendant Judicial Watch. As such, Plaintiff

Klayman sought rescission within a reasonable time and therefore is timely.

Fundamentally, when rescission is claimed in an action, it shall not be denied because of

an alleged delay unless the delay prejudices the other party. California Civil Code § 1693 provides: "When relief based upon rescission is claimed in an action or proceeding, such relief shall not be denied because of a delay in giving notice of rescission unless such delay has been substantially prejudicial to the other party."[5] Cal. Civ. Code § 1693. Defendant Judicial Watch has in no way been prejudiced by Plaintiff Klayman's slight – and reasonable under the circumstances – postponement of the instant action.

Moreover, Defendant Judicial Watch intentionally disrupted the course of the proceedings. An action for rescission should be initiated without reasonable delay ". . . unless the delay is caused by the party against whom rescission is sought." *Allen v. WestPoint-Pepperell, Inc.*, 945 F. 2d 40, 47 (2d Cir. 1991); *see also Yedlin v. Rubin*, 219 A.D. 694, 699, 220 N.Y.S. 545, 549-50 (2d Dep't 1927), *aff'd*, 247 N.Y. 529, 161 N.E. 170 (1928). In effect, Defendant Judicial Watch challenged diversity jurisdiction in the Florida jury verdict case – which was the only subject-matter jurisdictional basis of the case – when the Eleventh Circuit raised the issue of jurisdiction *sua sponte* in adjudicating Plaintiff Klayman's Motion for Attorneys' Fees and Costs. Defendant Judicial Watch understood that if it could have the Eleventh Circuit rule that Plaintiff Klayman was not a citizen of Florida, the lower court verdict and judgment could be set aside.

## IV.    PLAINTIFF'S COMPLAINT IS NOT BARRED BY RES JUDICATA

Defendant Judicial Watch also wrongly contends that the Complaint is barred by the doctrine of *res judicata*. Defendant unavailingly pushes the position that "[t]he complaint is barred by res judicata because, on its face, it seeks additional relief under a new cause of action

---

[5]    *See Bemer Aviation, Inc. v. Hughes Helicopter, Inc.*, 621 F. Supp. 290 (E.D. Pa. 1985) (The judge granted a rescission and held that seven months – like here – was prompt to notify defendant of rescission. The judge goes further and rules that only when the other party is substantially prejudiced would prompt notice of rescission be required. *Id*. at 295-96.

based on the same factual nucleus that was litigated and adjudicated." Def.'s Mot. at 10. Yet, the

case law upon which Defendant relies ironically supports Plaintiff's position that *res judicata*

does not apply for several reasons discussed below.

The doctrine of *res judicata* maintains that "a judgment on the merits in a prior suit bars a

second suit involving the same parties or their privies based on the same cause of action." *Drake*

*v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002), *cert. denied* 537 U.S. 1193, 2003). *Res judicata* bars a

subsequent lawsuit only if there has been a prior litigation: (1) involving the same claims or

cause of action, **and** (2) between the same parties or their privies, **and** (3) there has been a final,

valid judgment on the merits by a court of competent jurisdiction. *See Smalls v. United States*,

471 F.3d 186, 192 (D.C. Cir. 2006). All three elements need to be established in order for *res*

*judicata* to apply. Thus, even if one of the elements of *res judicata* is not satisfied, *res judicata* –

by law – cannot apply. Here, as discussed below, at a minimum two of the essential elements are

not satisfied and therefore *res judicata* does not and cannot apply.

**A.  *Res Judicata* Fails Because the Two Cases Do Not Involve the Same Claim.**

"[V]irtually all federal courts" have adopted the transactional approach to determine

whether two suits involve the same cause of action. Wright & Miller, Federal Practice and

Procedure, Definition of Claim or Cause of Action, 18 F.P.P. § 407 (2008) (transactional

approach is "the predominant federal rule"). *See Waldman v. Village Kiryas Joel*, 207 F.3d 105

(2nd Cir. 2000); *U.S. ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 910-911 (9th Cir. 1998).

The "transactional" approach examines whether a claim arises from the "same nucleus of

facts" as a previous claim. *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984). Even

Defendant concedes in its Motion to Dismiss that "[i]t is the factual nucleus . . . which operates

to constitute the cause of action for claim preclusion purposes." *Stutsman v. Kaiser Found.*

*Health Plan of Mid-Atlantic States, Inc.*, 546 A.2d 367, 369-70 (D.C. Cir. 1988). Defendant's

Motion to Dismiss at 10. "Federal law is clear that post-judgment events give rise to new claims, so that claim preclusion is no bar." *Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 78 (D.C. Cir. 1997). And "[claim preclusion] does not bar parties from bringing claims based on material facts that were not in existence when they brought the original suit." *Apotex, Inc. v. Food & Drug Admin. et al.*, 393 F.3d 210, 218 (D.C. Cir. 2004). Where, as here, events underlying the second action took place *after* the first action had been filed, claims based on those events are not barred by *res judicata*. On the contrary, this Circuit has clearly ruled that the *res judicata* doctrine "does not preclude claims based on facts not yet in existence at the time of the original action." *Drake,* 291 F.3d at 66.

In *Drake*, a flight attendant had been dismissed for allegedly tampering with his random drug test administered pursuant to regulations promulgated by the Federal Aviation Administration ("FAA"). After unsuccessfully trying to sue his employer, Delta, Drake asked the FAA to undertake a formal investigation of Delta's allegedly unlawful processing of his urine sample. While the investigation was pending, Drake sued the FAA challenging the constitutionality of the agency's drug testing regulations under the Fourth Amendment. Drake then initiated a second lawsuit against the FAA, alleging in part, that the agency's determination that Delta did not violate drug-testing regulations was unreasonable. The district court wrongly dismissed the second action, on *res judicata* grounds upon finding that it arose out of the same nucleus of facts as the first action, which the court had dismissed on the merits.

The court of appeals, however, denied the government's motion for summary affirmance of the lower court's disposition of the second case upon questioning whether it had properly applied the doctrine of *res judicata*. *Drake*, 291 F.3d at 66. On review, the court of appeals found it "clear that, for the most part, the causes of action asserted in FAA II are different from those

asserted in FAA I." *Id*. Specifically, "the first case was concerned with [] regulations as a whole, and the related allegation that the laxity of these regulations may have allowed Delta to violate Drake's rights . . ." *Id*. Comparing the two lawsuits, the court found them to be "in marked contrast" insofar as the second "attacks the agency's subsequent determination that Delta did not violate those regulations . . ." *Id*. The court thus concluded that the claims in the second case were "plainly . . . based on a different nucleus of facts than were those advanced in" the first." *Id*.

Similarly, here, the complaint filed in the original *Klayman v. Judicial Watch* case on April 12, 2006, almost *nine* (9) years ago, involved nine (9) counts ranging from fraudulent misrepresentation to specific performance. The thrust of the complaint was requesting the court to enter judgment against Judicial Watch to execute the terms of the Severance Agreement by: paying Klayman the remaining amounts due under the Severance Agreement, including reimbursing Klayman for business expenses; returning Klayman's personal items, property and artwork; returning the property of Klayman & Associates, P.C.; removing Klayman as a guarantor of all credit card accounts; removing Klayman as a guarantor for the Building; providing Klayman access to documents; and otherwise complying with the Severance Agreement.  In all counts but two, Klayman requested damages against the defendants.

By contrast, the events underlying the instant complaint took place *after* the first action had been filed – indeed, the jury found in Plaintiff Klayman's favor eight (8) years after – and are, therefore, not barred by *res judicata*. See *Drake*, 291 F.3d at 66. Specifically, the instant complaint alleges that Judicial Watch definitively defamed Plaintiff Klayman with malice arising from an event that took place on February 22, 2012, six (6) years *after* the original complaint was filed. A jury awarded Plaintiff compensatory and punitive damages because of Defendant's

crooked behavior.[6]

Defendant thus mistakenly characterizes the two lawsuits here as arising out of the same

operative facts. On the contrary, the instant complaint, which focuses on the Defendant's actions

subsequent to the issuance of any interlocutory order – not a final judgment as required to

establish *res judicata* – by Judge Kotelly, clearly involves a claim based on occurrences and facts

that did not even exist at the time of the original action challenging Defendant's behavior for

other violations of the Severance Agreement.[7] As such, the *res judicata* doctrine does not

preclude this Court from reaching the merits of the claim raised here, as Plaintiff Klayman

demonstrated that not all *res judicata* elements are satisfied.

**B. *Res Judicata* Fails Because There Is No Final, Valid Judgment By Any Court.**

A final judgment occurs "when it terminates the litigation between the parties on the

merits" and "leaves nothing to be done but to enforce by execution what has been determined."

*St. Louis, Iron Mountain & Southern Railroad Co. v. Southern Express Co.*, 108 U.S. 24, 28-29

(1883); *Heike v. United States*, 217 U.S. 423, 429 (1968). A " . . . decree is final when the whole

controversy between the parties has been considered, all 'equities reserved' have been disposed

of, and nothing remains to be done but to carry it into execution." Fletcher, Equity Pl. & Pr., §

700. *See also Plummer v. Kearney*, 108 N.C. App. 310, 312, 423 S.E.2d 526, 528 (1992) ("An

order is not final, and therefore interlocutory, if it fails to determine the entire controversy

---

[6]     Just like claim preclusion, "changes in facts essential to a judgment will render [issue
preclusion] inapplicable in a subsequent action raising the same issues." *Montana v. United
States*, 440 U.S. 147, 159 (1979). Issue preclusion is "confined to situations where the matter
raised in the second suit is identical in all respects with that decided in the first proceeding and
where the controlling facts and applicable legal rules remain unchanged." *C.I.R. v. Sunnen*, 333
U.S. 591, 600 (1948). "[I]f the relevant facts in the two cases are separable, even though they be
similar or identical, [issue preclusion] does not govern the legal issues which recur in the second
case." Id. at 601.
[7]     *Res Judicata* only applies to claims that were ripe at the time the initial Complaint was
filed. *See Raw v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 530 (6th Cir. 2006).

between the parties.").

In *Grant*, a foreclosure action between a creditor and debtor ensued and the trial court entered a decree foreclosing deeds of trust, referred the cause to its auditor, and appointed a receiver to take possession of the debtor's property. The Supreme Court held that because the trial court referred the case to an auditor, the decree was not final. *Grant v. Phoenix Ins. Co.*, 106 U.S. 429 (1882). Indeed, "[t]he rule is well settled that a decree to be final, within the meaning of that term as used in the acts of Congress giving this court jurisdiction on appeal, must terminate the litigation of the parties on the merits of the case, so that if there should be an affirmance here, the court below would have nothing to do but to execute the decree it had already rendered." *Id*. at 430-431.

The facts are even more compelling here. First, Judge Kollar-Kotelly *never once* entered anything near a final judgment in the first case. Interlocutory orders and minute orders during the course of a lawsuit are not valid, final orders, much more judgments. The Judge *never once* determined the entire controversy between the parties, which is what would be required in order to stand a chance of using *res judicata* as an affirmative defense. *See Bostwick v. Brinkerhoff*, 106 U.S. 3 (1882); *Heike*, 217 U.S. 423 (1968).  In fact, the last substantive docket entry for the first case is a Memorandum in Opposition to a Motion to Postpone a Pretrial Conference filed by Defendants on October 11, 2011.

Second, while pushing the false position that the instant action has been "litigated and adjudicated" Defendants Motion to Dismiss at 10, Defendant Judicial Watch knows exceedingly well that there was never a final judgment on the merits in the first case. In fact, Defendant Judicial Watch filed a Notice of Removal of this instant case on February 11, 2015 – just days ago – anticipating the instant case be transferred to the Honorable Colleen Kollar-Kotelly.

Defendant Judicial Watch argues, "[t]hese same parties are currently parties in a related case that is *pending* in this Court and styled as *Larry Klayman v. Judicial Watch, Inc.*, Civil Action No.: 1:06-cv-00670, before the Honorable Colleen Kollar-Kotelly." (emphasis added). If Defendant Judicial Watch seeks to remove the instant case to a case that is *pending*, then clearly, by the Defendant's own admission, there is no final, valid judgment in the first case. Thus, Defendant's Motion to Dismiss must be denied because no final judgment stands.[8]

## V. CONCLUSION

Defendant Judicial Watch, recently slammed with a $181,000 *final* judgment against it – including punitive damages – is up to its old tricks again. Plaintiff Klayman has stated a valid claim for rescission because he alleged a material breach of the Severance Agreement in his Complaint. He is entitled to rescission of the Severance Agreement because he never received a full and complete adequate remedy at law for the material breach by Defendant Judicial Watch,

---

[8]     ***Res Judicata* Fails Because the Two Cases Do Not Involve the Same Parties.**
        While two of the essential elements of *res judicata* do not apply, the   third element arguably does not apply as well. *Res Judicata* generally only bars successive claims by identical parties because "[a] person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate the claims and issues settled in that suit.'" *Taylor v. Sturgell*, 128 S. Ct. 2161, 2171 (2008) (citation omitted). The "application of [res judicata] to non-parties thus runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'" *Id.* (*quoting Richards v. Jefferson County*, 517 U.S. 793, 798 (1996).
        Defendant Judicial Watch does not dispute that there are different parties involved in the original complaint and in the instant action. In fact, Defendant does not mention the parties at all. In the original complaint, again filed almost nine (9) years ago, Plaintiff Klayman and *Louise Benson* filed suit against Judicial Watch, Inc., Thomas J. Fitton, Paul Orfanedes, and Christopher Farrell.  Plaintiffs Klayman and Benson filed suit against the individuals in their official and personal capacities. Here, in the instant action, Plaintiff Klayman files by himself, that is, without the co-plaintiff Louise Benson, against one entity, Judicial Watch, Inc. Indeed, Paul Orfanedes and Christopher Farrell *are not mentioned once* in the instant complaint. Thomas Fitton, the current President of Judicial Watch who Plaintiff Klayman appointed as President, is only mentioned transiently in order provide the Court with his position, that is, as President. Thus, in addition to failing on the "same cause of action" element of *res judicata*, the doctrine also fails because the same parties are not involved in the instant action.

he demonstrated his intent to return Defendant Judicial Watch to its original position in the

Complaint, and he is timely. Plaintiff Klayman's claims are not barred by *res judicata* because,

at an absolute minimum, the two cases at issue do not involve the same claim, they were not and

*could not* be litigated in the same jurisdiction, they involve different parties, and because there is

no final judgment by any court. For the foregoing reasons, this Court must deny Defendant's

Motion to Dismiss.


Dated:  February 19, 2015


                                                    Respectfully Submitted,


                                                     /s/ *Larry Klayman*
                                                    Larry Klayman, Esq.
                                                    D.C. Bar No. 334581
                                                    2020 Pennsylvania Ave. NW, Suite 800
                                                    Washington, DC 20006
                                                    Tel: (310) 595-0800
                                                     Email: leklayman@gmail.com

                                                    Plaintiff Pro Se

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 19th day of February, 2015 a true and correct copy of the foregoing Memorandum In Opposition To Defendant Judicial Watch, Inc.'s Motion To Dismiss (Civil Action No. 1:15-cv-00214) was filed electronically using CM/ECF to the U.S. District Court for the District of Columbia and served upon the following:

Via CM/ECF:

Richard W. Driscoll, Esq. (436471)
300 N. Washington Street, Suite 610
Alexandria, VA 22314
Telephone: 703-822-5001
Facsimile: 703-997-4892
Email: rdriscoll@driscollseltzer.com

*Counsel for Defendant Judicial Watch*

  /s/ *Larry Klayman*
Larry Klayman, Esq.
D.C. Bar No. 334581
2020 Pennsylvania Ave. NW, Suite 800
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com